Drake, Oh. J.,
delivered the opinion of the court:
The petition in this case is demurred to.
On looking into it we find that it presents a case which is not in any essential particular different from that of the same party as reported in 13 C. Cls. R., 251.
*117 The claimant avers that, in. the year 1878, he was chief supervisor of elections in and for the district of New Jersey, and as such prepared and furnished instructions to the supervisors of election acting under him. Having prepared the instructions in writing, he filed in his office the original writing, and caused copies thereof to be printed in pamphlet form, and in that form furnished to the supervisors. These instructions consisted of 6,399 words, and claimant furnished 155 supervisors each with a printed copy thereof.
At the same time he prepared in writing a set of special instructions for the use of supervisors in charge of registration slips, the original of which he filed in his office, and caused copies thereof to be printed in pamphlet form and in that form furnished to that class of supervisors. These instructions consisted of 220 words, and claimant furnished 53 supervisors in charge of registration slips each with a printed copy thereof.
To each printed copy of each description of instructions was appended a certificate, under the claimant’s hand and seal, that such was a true copy, as taken from and compared with the original then on file.
The claim set up in the petition is—
“ For 155 copies of instructions, amounting to 9,920 folios, at 15 cents per folio. $1,488 00
11 For 53 copies of special instructions, at same rate. 15 ■ 90
“ For 208 certificates to copies of the instructions of both descriptions, at 15 cents each. 31 20
$1,535 10
Aside from the mere figures, the only differences between this case and that previously decided, so far as the copies are concerned, are, 1, that there the claimant filed in his office one of the printed copies of the instructions he had prepared, while here he filed the original manuscript copy; and, 2, that there the printed instructions were issued to the supervisors, not as copies of an original paper which the claimant kept on file, but as themselves, in each case, the original paper, while here he sent out each copy with a certificate attached to it that it was a true copy as taken from and compared with the original on file in his office.
Do these points of difference take the present case from under the operation of the ruling made in the former? That must *118 depend on the terms of tlie law under which the claimant acted, and on which he relies to sustain his present demand. His compensation for coinés of papers is defined in section 2031 of the Eevised Statutes, as follows;
“There shall be allowed and paid to the chief supervisor, for Ms services as such officer, the following compensation: ■ * ’* * For arranging and transmitting to Congress, as provided for in section 2020, any report, statement, record, return, or examination, for each folio, fifteen cents; and for any copy thereof, or of any paper on file, a like sum.”
The words “for any copy * * * of any paper on file” are those upon which the claimant rests his demand. He claims that having prepared instructions to his subordinates, as required by section 2026 Eevised Statutes, it was his statutory duty, first, to file the original thereof in his office, and, second, to deliver to each subordinate a certified copy thereof.
We suppose the first of these positions to be correct, and are disposed to admit that it was his duty to “preserve' and file” in his office a copy of any instructions issued by him to subordinates; for section 2026 required him to “receive, preserve, and file all * * * records of every kind or nature contemplated or made requisite by the provisions hereof”; and it seems reasonable to hold that the legislature intended the chief supervisor’s instructions to be a part of the records of his office.
But when we come to the matter of his delivering to his subordinates printed copies of the instructions, certified by him to be true copies, the question arises — and it is the only one— whether the law made it his duty to issue his instructions in the shape of certified copies? If it did, he is entitled to what he claims; if it did not, he is entitled to nothing.
By section 2026 it is provided that “ the chief supervisor shall prepare and furnish all necessary books, forms, blanks, and instructions for the use and direction of the supervisors of election” ; and this is the only definition of his duty in regard to instructions to his subordiuates. It is summed up in the words “prepare and furnish instructions for the use,” &c.
It seems to us clear that there was no legislative intention that, as between the chief supervisor and his subordinates, the authenticity of his instructions to them should be established by a certified copy thereof. The law required him to • do no more than “prepare and furnish” the instructions; and when *119 lie “furnished” them to a supervisor, and signified to him, orally ■or in writing, that they were “instructions for the use and direction of the supervisor,” that officer was as much bound to know that they were the orders of his superior, which it was his duty to observe and obey, as any certificate and seal of the chief supervisor could bind him to know that fact. The instructions were simply a letter from a superior to an inferior officer, the genuineness of which was all that the inferior was concerned with; and that was not to be shown by a certificate of the superior that the paper was a copy, but by his delivering it to the inferior as an original, authoritative, and obligatory document.
. To a stranger desiring an authentic copy of the paper, a certified copy would, of course, be necessary; but to a subordinate officer there could arise no necessity for -dny such copy. To ■each supervisor receiving the instructions from his chief, they were complete by the act of delivery to him; and he could have not the least right to demand of the chief to authenticate by his •certificate the genuineness of -instructions, whose genuineness had already been declared by the mere act of delivery.
It follows, then, that the claimant, in giving out to Ms subordinates certified copies of his instructions, did what was neither required nor authorized by the law, and therefore is not entitled to the statutory compensation provided for making and certifying copies.
The demurrer must be sustained.